**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **OMNI MEDSCI, INC.,** | |
| *Plaintiff,* | |
| **v.** | **Civil Action No. 2:25-CV-483** |
| **SAMSUNG ELECTRONICS, CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., FOSSIL GROUP, INC., FOSSIL STORES I, INC., FOSSIL PARTNERS, L.P., ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., and ŌURA HEALTH OY,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Omni MedSci, Inc., by and through its undersigned counsel, files this Complaint against Defendants Samsung Electronics, Co. Ltd., Samsung Electronics America, Inc., Fossil Group, Inc., Fossil Stores I, Inc., Fossil Partners, L.P., OnePlus Technology (Shenzhen) Co., Ltd., and Ōura Health Oy (collectively, "Defendants") for infringement of United States Patent No. 12,268,475 ("the '475 Patent" or "Asserted Patent") (a copy of the Asserted Patent is attached as Exhibit 1), and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for infringement of the Asserted Patents arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, to obtain damages and injunctive relief resulting from Defendants' unauthorized actions of making, having made, using, selling, having sold, offering to sell, importing, or having imported into the United States products that infringe or enable the infringement of one or more claims of the Asserted Patents.

## THE PARTIES

2.      Plaintiff Omni MedSci, Inc. ("Omni MedSci" or "Plaintiff") is a corporation organized and existing under the laws of the state of Michigan with a place of business at 1718 Newport Creek Drive, Ann Arbor, Michigan 48103.

3.      Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea.  SEC has a principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-Do, Korea 443-742.

4.      Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary corporation of SEC.  SEA is organized and existing under the laws of New York with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

5.      SEA is registered to do business in the State of Texas and has been since at least June 10, 1996.  SEA maintains offices and/or other facilities at least at 6625 Excellence Way, Plano, Texas 75023.

6.      SEA may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.      Upon information and belief, SEA employs full-term personnel such as sales personnel and engineers in this District.

8.      Upon information and belief, SEC conducts all or substantially all of its activities in the United States through its wholly owned and controlled subsidiary SEA.  Alternatively, SEC and SEA form a joint business enterprise such that the performance by one is attributable to the other.

9.      SEC and SEA are referred to collectively as "Samsung."

10.    Samsung designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports cell phones, tablets, smartwatches, and smart rings configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including this Judicial District.   In addition, Samsung has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

11.    Samsung controls and operates a cloud computing platform, including Samsung Cloud, through which it provides cloud computing services involving receiving data signals over wireless transmission links from cell phones and tablets located in the Unites States, processing received data, and storing data within the United States.

12.    Defendant Fossil Group, Inc. ("Fossil Group") is a corporation organized and existing under the laws of Delaware.

13.    Fossil Group has a principal place of business at 901 S. Central Expressway, Richardson, Texas 75080.

14.    Defendant Fossil Stores I, Inc. ("Fossil Stores") is a corporation organized and existing under the laws of Delaware.

15.    Fossil Stores has a principal place of business at 901 S. Central Expressway, Richardson, Texas 75080.

16.    Fossil Stores is a wholly owned subsidiary of Fossil Group.

17.    Fossil Stores maintains a store in this District, at least at 820 W. Stacy Road, Allen, Texas 75013.

18.    Defendant Fossil Partners, L.P. ("Fossil Partners") is a limited partnership organized and existing under the laws of Texas.

19.     Fossil Partners has a principal place of business at 901 S. Central Expressway, Richardson, Texas 75080.

20.     Fossil Group is the sole general partner of Fossil Partners.

21.     Upon information and belief, Fossil Group conducts all or substantially of the "FOSSIL" brand's U.S. operations through Fossil Partners and Fossil Stores.  Alternatively, Fossil Group, Fossil Partners, and Fossil Stores form a joint business enterprise such that the performance by each one is attributable to each other one.

22.     Fossil Group, Fossil Stores, and Fossil Partners are referred to collectively as "Fossil."

23.     Fossil can be served through their registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

24.     Fossil designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports smartwatches configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including this Judicial District. In addition, Fossil has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

25.     Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus") is a limited company organized and existing under the laws of China.

26.     OnePlus has a principal place of business at 18F Tairan Building, Block C, Tairan 3 8th Road, Chegongmiao, Futian District, Shenzhen, Guangdong 518040, China.

27.     OnePlus designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports cell phones, tablets, and watches configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including

this Judicial District.  In addition, OnePlus has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

28.     OnePlus controls and operates a cloud computing platform, including OnePlus Cloud, through which it provides cloud computing services involving receiving data signals over wireless transmission links from cell phones and tablets located in the United States, processing received data, and storing data in the United States.

29.     Defendant Ōura Health Oy ("Ōura") is a Finnish osakeyhtiö with its principal place of business at Elektroniikkatie 10, 90590, Oulu, Finland.

30.     Ōura designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports rings configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including this Judicial District.  In addition, Ōura has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

**JURISDICTION AND VENUE**

31.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 30 above.

32.     Jurisdiction and venue for this action are proper in this Judicial District.

33.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

34.     This Court has personal jurisdiction over Samsung at least because, through SEC's and SEA's own acts and/or through the acts of each other acting as its agent, representative, or alter

ego, they (i) have a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) have done and are doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintain continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

35.     For example, Samsung has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Samsung has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

36.     This Court has personal jurisdiction over Fossil at least because, through Fossil Group's, Fossil Partner's and Fossil Stores's own acts and/or through the acts of each other acting as its agent, representative, or alter ego, they (i) have a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) have done and are doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintain continuous and systematic contacts in the State of Texas and this Judicial

District; and/or (v) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

37.     For example, Fossil has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Fossil has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

38.     This Court has personal jurisdiction over OnePlus at least because, through OnePlus's own acts and/or through the acts of others acting as its agent, representative, or alter ego, OnePlus (i) has a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) has done and is doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintains continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) places products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

39.     For example, OnePlus has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and OnePlus

has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

40.     This Court has personal jurisdiction over Ōura at least because, through Ōura's own acts and/or through the acts of others acting as its agent, representative, or alter ego, Ōura (i) has a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) has done and is doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintains continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) places products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

41.     For example, Ōura has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Ōura has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

42.     Defendants have each established sufficient minimum contacts with the State of Texas and this Judicial District such that they should reasonably and fairly anticipate being brought into court in the State of Texas, including this Judicial District, without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Texas, including this Judicial District.  Moreover, the patent infringement

claims alleged herein arise out of or are related to one or more of the foregoing activities.  On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas, including this Judicial District.

43.    Venue is proper in this Judicial District as to Defendants under 28 U.S.C. §§ 1391 or 1400(b).

44.    As foreign entities, venue is proper as to SEC, OnePlus, and Ōura under 28 U.S.C. § 1391(c)(3).  *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the application of the general venue statute to foreign defendants").

45.    Venue is proper as to SEA and Fossil under 28 U.S.C. § 1400(b) because they have offered to sell or sold products accused of infringement to actual or potential customers located in this District and have a regular and established place of business in this District, as alleged above.

## JOINDER

46.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 45 above.

47.    Joinder is proper under at least Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299 at least because Defendants' infringing conduct as alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the U.S., offering for sale, and/or selling of constituents of the same accused systems, and questions of fact common to all Defendants will arise in this action.

48.    Samsung, Fossil, OnePlus, and Ōura each make, use, import, offer for sale, and/or sell wearable smart devices configured to measure physiological parameters and to transmit data

signals over wireless transmission links to smartphones and tablets, including Samsung and OnePlus smartphones and tablets.

49.     Samsung and OnePlus also each make, use, import, offer for sale, and/or sell smartphones and tablets that receive data signals over wireless transmission links from Samsung, Fossil, OnePlus, and Ōura wearable smart devices.

50.     Samsung, Fossil, OnePlus and Ōura each also provide and support software applications that enable their respective wearable devices to be integrated with various smartphones and tablets, including Samsung and OnePlus smartphones and tablets, and to enable such integrated smartphones and tablets to receive and process data signals associated with measured physiological parameters over wireless transmission links from such wearable devices.

51.     Samsung also provides cloud storage and computing services, including Samsung Cloud, via a cloud computing platform which receives and processes data signals associated with measured physiological parameters over wireless transmission links from cell phones and tablets.

52.     OnePlus also provides cloud storage and computing services, including OnePlus Cloud, via a cloud computing platform which receives and processes data signals associated with measured physiological parameters over wireless transmission links from cell phones and tablets.

53.     Ōura also provides cloud storage and computing services, including Ōura Cloud, via a cloud computing platform which receives and processes data signals associated with measured physiological parameters over wireless transmission links from cell phones and tablets.

54.     Each Defendant is accused of infringing the Asserted Patents by, inter alia, making, using, offering for sale and/or selling measurement systems comprising their respective wearable devices integrated with and connected to smartphones and tablets, including Samsung and/or OnePlus smartphones and tablets, so as to enable such smartphones and tablets to receive and

process data signals associated with measured physiological parameters over wireless transmission links from each Defendant's wearable devices and by inducing and contributing to the direct infringement of such systems by third parties. Because Samsung, Fossil, OnePlus, and Ōura wearable devices are configured to measure physiological parameters and to transmit associated data signals wirelessly to smartphones and tablets, including Samsung and OnePlus smartphones and tablets, there is significant overlap of the components of the accused systems provided and supported by each Defendant.

55.     Based on the above, factual questions relating to Samsung, Fossil, OnePlus, and Ōura's infringement will substantially overlap.

## BACKGROUND

### Dr. Mohammed Islam and Omni MedSci, Inc.

56.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 55 above.

57.     Dr. Islam received his B.S. degree in 1981, a M.S. degree in 1983, and a Sc.D. degree in 1985, all in electrical engineering, from the Massachusetts Institute of Technology in Cambridge.

58.     Early in his career, Dr. Islam was a member of the Technical Staff in the Advanced Photonics Department at AT&T Bell Laboratories in Holmdel, N.J.

59.     Dr. Islam joined the Electrical and Computer Engineering department at the University of Michigan in Ann Arbor in 1992, where he remains today as a Full Tenured Professor of Optics and Photonics.

60.     Dr. Islam is also a Professor of Biomedical Engineering, a joint department in both the College of Engineering and the Medical School, at the University of Michigan. He was

previously a faculty member with the University of Michigan Medical School's Department of Internal Medicine.

61.    From 1981 to 1985, Dr. Islam was a Fannie and John Hertz Fellow.  In 1992, Dr. Islam was awarded the OSA Adolf Lomb Medal for pioneering contributions to nonlinear optical phenomena and all-optical switching in optical fibers.  He also received the University of Michigan research excellence award in 1997.  In 1998, Dr. Islam became a Fellow of the Optical Society of America and received the Texas eComm Ten Award for being one of the 10 most influential people in Texas's digital economy in 2002.  Dr. Islam became a fellow of the IEEE in 2004 and was the first recipient of the prestigious 2007 Distinguished University Innovator Award.

62.    Dr. Islam has published over 135 papers in refereed journals, authored three books has written several book chapters, and has been an invited speaker at over 80 conferences and symposia on issues related to his research.  He is also the named inventor on over 200 U.S. patents, including the Asserted Patents.

63.    With an entrepreneurial spirit, Dr. Islam founded Omni MedSci in 2010 to help people by commercializing his optical technology innovations with healthcare and medicine applications.

64.    In 2015, Omni MedSci received the Eureka Award for being the #1 most Innovative Company in Michigan.

65.    By 2012, Dr. Islam had invented technology for using light sources and other components in wearable measurement devices that are capable of detecting and monitoring physiological parameters for use in various applications, including the medical and healthcare fields.

66.     On December 31, 2012, Omni MedSci filed a set of patent applications covering its developments using light sources for medical and other applications.

67.     The Asserted Patents result from extensive research and development by Dr. Mohammed Islam on behalf of Omni MedSci.

## The Asserted Patent

## U.S. Patent No. 12,268,475

68.     On April 8, 2025, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,268,475 (the "'475 Patent"), entitled "Wearable Device for Differential Measurement on Pulse Rate and Blood Flow." The '475 Patent is attached as Exhibit 1.

69.     Plaintiff is the assignee of all rights, title, and interest in and to the '475 Patent and, at a minimum, of all substantial rights in the '475 Patent, and possesses all rights of recovery, whether legal or equitable, under the '475 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

70.     The '475 Patent is valid and enforceable.

71.     The '475 Patent is related through a chain of continuation applications to U.S. Patent Nos. 12,193,790; 11,160,455; 10,517,484; and 9,651,533, which are asserted in a co-pending litigation styled as *Omni MedSci, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:24-cv-01070-JRG-RSP (E.D. Tex. filed Dec. 20, 2024). The '475 Patent discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive physiological parameters.

72.     The asserted claims of the '475 Patent are directed to an apparatus (*e.g.*, wearable device configured to be worn by a user) that comprises at least the following physical components:

a light source that may comprise a plurality of light emitting diodes (LEDs); one or more lenses configured to receive output light from the light source and direct it towards bodily tissue of a user; one or more optical detectors configured to receive at least a portion of output light from the light source reflected from the tissue of the user; and a processor (*see* claims 1, 5, and 8). Certain claims also include further physical components such as one or more biosensors and an analog to digital converter (*see* claim 1) and a non-transitory computer readable medium (*see* claim 5). Thus, the asserted claims of the '475 Patent are each directed to a physical system or device and are not directed to an abstract idea.

73.   The asserted claims of the '475 Patent further recite the capability of increasing the signal-to-noise ratio of an output signal associated with a physiological parameter of the user by using or comparing a first signal generated responsive to light received while the semiconductor sources are off and a second signal generated responsive to light received while at least one of the semiconductor sources is on (*see* claims 1 and 8), by synchronizing the detection system to the light source (*see* claim 1), and by modulating the light source with a modulation frequency (*see* claim 13). These elements provide for a unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a blood constituent or a blood flow of a user.

74.   Certain of the asserted claims of the '475 Patent include additional elements that provide further beneficial enhancements, such as particular arrangement of detectors in the apparatus (*see* claim 1), particular functionality for communicating with a smart phone or tablet (*see* claim 7), a particular positioning, configuration, and arrangement of LEDs and detectors along an arc (*see* claim 6), using artificial intelligence technology to make decisions associated with the

output signal (*see* claim 5), and use of output light within a particular optical wavelength range (*see* claim 11).

75.    Thus, the asserted claims of the '475 Patent are directed to specific improvements to wearable devices for non-invasive monitoring of physiological parameters, including parameters associated with a blood constituent or blood flow of a user.  The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '475 Patent.

### Knowledge of the Asserted Patent

76.    Defendants have had actual notice of the '475 Patent and the infringement alleged herein at least upon service of this Complaint.

77.    On information and belief, the Defendants each have lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the Asserted Patent and, at least in part, due to the co-pending litigation styled as *Omni MedSci, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:24-cv-01070-JRG-RSP (E.D. Tex. filed Dec. 20, 2024).  The timing, circumstances, and extent of each Defendant obtaining actual knowledge of the Asserted Patent prior to commencement of this lawsuit will be confirmed during discovery.

### THE ACCUSED SYSTEMS

### Samsung Devices

78.    Defendant Samsung makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartwatches.  These smartwatches include, among others, the Galaxy Watch, the Galaxy Watch Active and Active2, the Galaxy Watch3, the Galaxy Watch4, the Galaxy Watch5, the Galaxy Watch6, the Galaxy Watch7, and the Galaxy Watch Ultra (each a "Samsung

Smartwatch"). The Samsung Smartwatches include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are designed and intended for use with a smartphone or tablet computer. Samsung actively markets and supports sales of Samsung Smartwatches through its websites and other means, and sells these smartwatches to retailers, distributors, and/or other resellers.

79.     Samsung also makes, uses, sells, offers for sale, and/or imports into the United States smartphones, such as Samsung Galaxy A series phones, Samsung Galaxy M series phones, Samsung Galaxy S series phones, and Samsung Galaxy Z series phones (each a "Samsung Phone") as well as tablet computers, such as Samsung Galaxy Tab A series tablets, Samsung Galaxy Tab S series tablets, and Samsung Galaxy Tab Active series tablets (each a "Samsung Tablet"). Samsung also provides a cloud computing platform, such as the Samsung Cloud. Samsung also provides software applications, such as the Samsung Health App, which is configured to integrate Samsung Smartwatch products for use with iOS or Android OS smartphones and tablets, including Samsung Phone and Samsung Tablet products.

80.     When the user wears a Samsung Smartwatch on their wrist, the watch measures physiological parameters using various hardware components, such as Samsung's "BioActive sensor." The Samsung Smartwatch products are also configured to transfer information related to these parameters to an iOS or Android OS smartphone or tablet computer running a compatible mobile app and operable to transfer of associated information to a cloud computing platform such as the Samsung Cloud. Thus, Samsung provides and supports multiple hardware and software components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of a Samsung Smartwatch.

81.     Samsung also makes, uses, sells, offers for sale, and/or imports into the United States smart rings, such as Samsung Galaxy Ring ("Samsung Ring").  When the user wears a Samsung Ring on their finger, the ring measures physiological parameters using various hardware components, such as Samsung's "Bio-signal Sensor." The Samsung Ring products are also configured to transfer information related to these parameters to an Android OS smartphone or tablet computer running a compatible mobile app and operable to transfer associated information to a cloud computing platform such as the Samsung Cloud.  Thus, Samsung provides and supports multiple components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of a Samsung Ring.

### OnePlus Devices

82.     Defendant OnePlus makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartwatches.  These smartwatches include, among others, OnePlus Watch, OnePlus Watch 2, OnePlus Watch 2R, and OnePlus Watch 3 series watches (each a "OnePlus Smartwatch").  The OnePlus Smartwatch products include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are designed and intended for use with an Android OS smartphone or tablet computer. OnePlus actively markets and supports sales of OnePlus Smartwatch products through its websites and other means, and sells these smartwatches to retailers, distributors, and/or other resellers.

83.     OnePlus also makes, uses, sells, offers for sale, and/or imports into the United States smartphones, such as OnePlus 6 and 6T, OnePlus 7 and 7 Pro, OnePlus 7T and 7T Pro, OnePlus 8 and 8 Pro, OnePlus 8T, OnePlus 9 and 9 Pro, OnePlus 10 Pro and 10T, OnePlus Ace Pro, OnePlus 11 and 11R, OnePlus 12 and 12R, OnePlus Open, and OnePlus Nord N30 series

smartphones (each a "OnePlus Phone") as well as tablet computers, such as OnePlus Pad and OnePlus Pad 2 series tablets (each a "OnePlus Tablet").  OnePlus also provides a cloud computing platform.  OnePlus also provides software applications, such as the OnePlus Health app and the OHealth app, configured to integrate OnePlus Smartwatch products for use with Android OS smartphones and tablets, including OnePlus Phone products and OnePlus Tablet products.

84.    When the user wears a OnePlus Smartwatch on their wrist, the watch measures physiological parameters using various hardware components.  The OnePlus Smartwatch products are also configured to transfer information related to these parameters to an Android OS smartphone or tablet computer running a compatible mobile app and capable of transferring associated information to a cloud computing platform such as the OnePlus Cloud.  Thus, OnePlus provides and supports multiple hardware and software components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of a OnePlus Smartwatch.

**Fossil Devices**

85.    Defendant Fossil makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartwatches.  These smartwatches include, among others, Fossil Gen 1 series watches, Fossil Gen 2 series watches, Fossil Gen 3 series watches, Fossil Gen 4 series watches, Fossil Gen 5 series watches, and Fossil Gen 6 series watches (each a "Fossil Smartwatch").  The Fossil Smartwatch products include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are designed and intended for use with an iOS or Android OS smartphone or tablet computer.  Fossil actively markets and supports sales of Fossil Smartwatch products through its websites, Fossil retail stores and other means, and sells these smartwatches to retailers, distributors, and/or other resellers.

86.     Fossil also provides software applications, such as the Fossil Smartwatches App or Wellness Watch App, configured to integrate Fossil Smartwatch products for use with iOS or Android OS smartphones and tablets, including Samsung Phone products, Samsung Tablet products, OnePlus Phone products, and OnePlus Tablet products.

87.     When the user wears a Fossil Smartwatch on their wrist, the watch measures physiological parameters using various hardware components.  The Fossil Smartwatch products are also configured to transfer information related to these parameters to an iOS or Android OS smartphone or tablet running a compatible mobile app and capable of transferring associated information to a cloud computing platform.  Thus, Fossil provides and supports multiple hardware and software components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of a Fossil Smartwatch.

## Ōura Devices

88.     Defendant Ōura makes, uses, sells, offers for sale, and/or imports into the United States a variety of smart rings.  These smart rings include, among others, Gen 1, Gen 2, Gen 3, and Gen 4 series smart rings (each an "Ōura Ring").  The Ōura Ring products include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are designed and intended for use with an iOS and Android OS smartphone or tablet computer. Ōura actively markets and supports sales of Ōura Ring products through its websites and other means, and sells these smart rings to retailers, distributors, and/or other resellers.

89.     Ōura also provides a cloud computing platform, such as the Ōura Cloud. Ōura also provides software applications, such as the Ōura app, configured to integrate Ōura Ring products

for use with iOS and Android OS smartphones and tablets, including Samsung Phone products, Samsung Tablet products, OnePlus Phone products and OnePlus Tablet products.

90.    When the user wears an Ōura Ring on their finger, the ring measures physiological parameters using various hardware components.  The Ōura Ring products are also configured to transfer information related to these parameters to an iOS or Android OS smartphone or tablet running a compatible mobile app and capable of transferring associated information to a cloud computing platform such as the Ōura Cloud.  Thus, Ōura provides and supports multiple components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of an Ōura Ring.

## Count I:  Infringement of the '475 Patent
### (Against All Defendants)

91.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 90 above.

92.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '475 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing wearable devices that embody the inventions claimed in the '475 Patent, in particular, at least claims 1, 5–8, and 11–13, within the United States and within this District.  Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartwatch and Samsung Ring, which are each configured to connect to Samsung Phone and Samsung Tablet products (collectively, "Samsung Products").  Samsung sells the Samsung Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales.  The Samsung Smartwatch and Samsung Ring products are designed to connect to and work in concert with the Samsung Phone and Samsung

Tablet products through related mobile apps provided by Samsung, which phones and tablets are operable to connect to a network to communicate with Samsung's cloud-based servers. Samsung has and continues to market and promote the compatibility between the Samsung Products for providing an integrated measurement system, and users need only perform simple steps to connect a Samsung Smartwatch or Samsung Ring with a Samsung Phone or a Samsung Tablet enabled with a Samsung health mobile app and supported by a Samsung cloud. On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 5–8, and 11–13 of the '475 Patent in connection with development, testing, and/or demonstration of devices comprising Samsung Products, particularly Samsung Smartwatch and Samsung Ring wearable devices.

93.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '475 Patent, including at least claims 1, 5–8, and 11–13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

94.    Samsung's customers and other end-users directly infringe at least claims 1, 5–8, and 11–13 at least by using infringing devices comprised of Samsung Smartwatch or Samsung Ring products, which may be integrated with a Samsung Phone, a Samsung Tablet and/or with another iOS or Android OS smartphone or tablet (including the OnePlus Phone and OnePlus Tablet products) running a compatible health mobile app provided and/or supported by Samsung. End-users have used and continue to use the subject matter of claims 1, 5–8, and 11–13 by placing the wearable devices into service and exercising control over them and obtaining beneficial use of each element of the claimed devices. End-users initiate use of the claimed devices by placing a

Samsung Smartwatch on their wrist or a Samsung Ring on their finger, which each may be wirelessly paired to a smartphone or tablet and synched to a health app on the smartphone or tablet with an associated cloud-based account.  The end user benefits from each component of the claimed device, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements.  Samsung's customers and other end-users also directly infringe at least claims 1, 5–8, and 11–13 at least by using Samsung Smartwatch or Samsung Ring wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

95.     Samsung has actual notice of the '475 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '475 Patent prior to commencement of this lawsuit will be confirmed during discovery.

96.     Samsung actively induces third parties, including customers and end-users, to use infringing Samsung Smartwatch or Samsung Ring products operating in their normal and customary way and in accordance with their intended functionality and purpose.  Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartwatch and Samsung Ring products to third parties and providing software designed to integrate such products with Samsung Phone products, Samsung Tablet products and/or other smartphones or

tablets running a compatible health mobile app, when such products are designed for use as wearable non-invasive measurement devices that infringe the '475 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '475 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Samsung Smartwatch products and Samsung Ring products are operated such that each element of the patented devices are present in a manner dictated by Samsung; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Samsung Smartwatch products, Samsung Ring products and other Samsung Products in their customary way; (vi) advertising and promoting the Samsung Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Products including the physiological measurement features thereof.

97.    Upon gaining knowledge of the '475 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Products infringe the '475 Patent.  Despite knowledge of the '475 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '475 Patent.  Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '475 Patent.  Samsung directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in the Samsung Smartwatch or Samsung Ring products.  On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '475 Patent.

98.     Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing wearable devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartwatch products and/or Samsung Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 5–8, and 11–13 of the '475 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

99.     Samsung's direct and indirect infringement of the '475 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

100.     On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '475 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '475 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '475 Patent.  Samsung's infringement of the '475 Patent, following its

knowledge of the '475 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

101. OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '475 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing wearable devices that embody the inventions claimed in the '475 Patent, in particular, at least claims 1, 5–8, and 11–13, within the United States and within this District. OnePlus has been and is engaged in one or more of these direct infringing activities related to its OnePlus Smartwatch, which is configured to connect to OnePlus Phone and OnePlus Tablet products (collectively, "OnePlus Products"). OnePlus sells the OnePlus Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The OnePlus Smartwatch products are designed to connect to and work in concert with the OnePlus Phone and OnePlus Tablet products through related mobile apps provided by OnePlus, which phones and tablets are operable to connect to a network to communicate with OnePlus's cloud-based servers. OnePlus has and continues to market and promote the compatibility between the OnePlus Products for providing an integrated measurement system, and users need only perform simple steps to connect a OnePlus Smartwatch with a OnePlus Phone or a OnePlus Tablet enabled with a OnePlus health mobile app and supported by a OnePlus cloud. On information and belief, Plaintiff further alleges that OnePlus employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 5–8, and 11–13 of the '475 Patent in connection with

development, testing, and/or demonstration of devices comprising OnePlus Products, particularly OnePlus Smartwatch.

102.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '475 Patent, including at least claims 1, 5–8, and 11–13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

103.    OnePlus's customers and other end-users directly infringe at least claims 1, 5–8, and 11–13 at least by making and using infringing OnePlus Smartwatch products, which may be integrated with a OnePlus Phone, a OnePlus Tablet and/or with another Android OS smartphone or tablet (including the Samsung Phone and Samsung Tablet products) running a compatible health mobile app provided and/or supported by OnePlus.  End-users have used and continue to use the subject matter of claims 1, 5–8, and 11–13 by placing the OnePlus Smartwatch into service and exercising control over it and obtaining beneficial use of each element of the claimed device.  End-users initiate use of the OnePlus Smartwatch by placing it on their wrist, which may be wirelessly paired it to a smartphone or tablet and synched to a health app on the smartphone or tablet with an associated cloud-based account.  The end user benefits from each component of the claimed device, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements.  OnePlus's customers and other end-users also directly infringe at least claims 1, 5–8, and 11–13 at least by using OnePlus Smartwatch wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

104.    OnePlus has actual notice of the '475 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of OnePlus

obtaining actual knowledge of the '475 Patent prior to commencement of this lawsuit will be confirmed during discovery.

105.    OnePlus actively induces third parties, including customers and end-users, to use infringing OnePlus Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose.  OnePlus induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the OnePlus Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the OnePlus Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, OnePlus induces direct infringement by such third parties by (i) selling the OnePlus Smartwatch products to third parties and providing software designed to integrate such products with OnePlus Phone products, OnePlus Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a wearable non-invasive measurement devices that infringe the '475 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '475 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of OnePlus Smartwatch products are operated such that each element of the patented devices are present in a manner dictated by OnePlus; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the OnePlus Smartwatch products and other OnePlus Products in their customary way; (vi) advertising and promoting the OnePlus Products; and/or (vii) updating,

enhancing, and providing ongoing support and maintenance for the OnePlus Products including the physiological measurement features thereof.

106.    Upon gaining knowledge of the '475 Patent, it became apparent to OnePlus that the manufacture, sale, importing, offer for sale, or use of the OnePlus Products infringe the '475 Patent.  Despite knowledge of the '475 Patent, OnePlus continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '475 patent.  OnePlus performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '475 Patent.  OnePlus directly benefits from and actively and knowingly encourages customers and end-users to use infringing OnePlus Smartwatch products. On information and belief, OnePlus will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '475 Patent.

107.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing OnePlus Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 5–8, and 11–13 of the '475 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

108.    OnePlus's direct and indirect infringement of the '475 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless OnePlus ceases its infringing activities, it will continue to injure Plaintiff.

109.    On information and belief, OnePlus acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that OnePlus should have known about it.  OnePlus continues to infringe the '475 Patent by making, using, selling, offering for sale and/or importing in the United States the OnePlus Products and by inducing and contributing to the direct infringing use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  OnePlus continues its infringement notwithstanding actual knowledge of the '475 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '475 Patent.  OnePlus's infringement of the '475 Patent, following its knowledge of the '475 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

110.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '475 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Fossil Smartwatch wearable devices  that embody the inventions claimed in the '475 Patent, in particular, at least claims 1, 5, 8, and 11–13, within the United States and this District.  Fossil has been and is engaged in one or more of these direct infringing activities related to its Fossil Smartwatch products.  Fossil sells the Fossil Smartwatch products through its retail stores and to distributors, retailers, and/or other customers throughout

the United States, and actively markets and supports sales.  The Fossil Smartwatch products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Fossil, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform.  Fossil has and continues to market and promote the compatibility between the Fossil Smartwatch products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect a Fossil Smartwatch with a smartphone or tablet enabled with a Fossil health mobile app and supported by a cloud.  On information and belief, Plaintiff alleges that Fossil employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 5, 8, and 11–13 of the '475 Patent in connection with development, testing, and/or demonstration of Fossil Smartwatch products.

111.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '475 Patent, including at least claims 1, 5, 8, and 11–13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

112.    Fossil's customers and other end-users directly infringe at least claims 1, 5, 8, and 11–13 at least by using infringing Fossil Smartwatch products, which may be integrated with a smartphone or tablet running a health mobile app provided and/or supported by Fossil.  End-users have used and continue to use the subject matter of asserted claims 1, 5, 8, and 11–13 by placing the Fossil Smartwatch into service and exercising control over it and obtaining beneficial use of each element of it.  End-users initiate use of the Fossil Smartwatch by placing it on their wrist,

which may be wirelessly paired to a smartphone or tablet and synched to a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed device, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements. Fossil's customers and other end-users also directly infringe at least claims 1, 5, 8, and 11–13 at least by using Fossil Smartwatch wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

113.   Fossil has actual notice of the '475 Patent and the infringement alleged herein at least upon the service of this Complaint.

114.   The timing, circumstances, and extent of Fossil obtaining actual knowledge of the '475 Patent prior to commencement of this lawsuit will be confirmed during discovery.

115.   Fossil actively induces third parties, including customers and end-users, to use infringing Fossil Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. Fossil induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Fossil Smartwatch products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Fossil Smartwatch products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Fossil induces direct infringement by such third parties by (i) selling the Fossil Smartwatch products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Fossil, when such products are designed for use as wearable non-invasive measurement devices that infringe the '475 Patent in

normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '475 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Fossil Smartwatch products are operated such that each element of the patented devices are present in a manner dictated by Fossil; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Fossil Smartwatch products in their customary way; (vi) advertising and promoting the Fossil Smartwatch products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Fossil Smartwatch products including the physiological measurement features thereof.

116.    Upon gaining knowledge of the '475 Patent, it became apparent to Fossil that the manufacture, sale, importing, offer for sale, or use of the Fossil Smartwatch products infringe the '475 Patent.  Despite knowledge of the '475 Patent, Fossil continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '475 patent.  Fossil performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '475 Patent.  Fossil directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing Fossil Smartwatch products.  On information and belief, Fossil will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '475 Patent.

117.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of

infringing wearable devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Fossil Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 5, 8, and 11–13 of the '475 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

118.    Fossil's direct and indirect infringement of the '475 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Fossil ceases its infringing activities, it will continue to injure Plaintiff.

119.    On information and belief, Fossil acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Fossil should have known about it.  Fossil continues to infringe the '475 Patent by making, using, selling, offering for sale and/or importing in the United States the Fossil Smartwatch products and by inducing and contributing to the direct infringing use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Fossil continues its infringement notwithstanding actual knowledge of the '475 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '475 Patent.  Fossil's infringement of the '475 Patent, following its knowledge of the '475 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

120.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '475 Patent pursuant to 35 U.S.C.

§ 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Ōura Ring wearable devices that embody the inventions claimed in the '475 Patent, in particular, at least claims 1, 5, 8, and 11–13, within the United States and within this District. Ōura has been and is engaged in one or more of these direct infringing activities related to its Ōura Ring products. Ōura sells the Ōura Ring products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Ōura Ring products are designed to connect to and work in concert with a smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Ōura, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Ōura has and continues to market and promote the compatibility between the Ōura Ring products and popular smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Ōura Ring with a smartphone or tablet enabled with an Ōura health mobile app and supported by an Ōura cloud. On information and belief, Plaintiff alleges that Ōura employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 5, 8, and 11–13 of the '475 Patent in connection with development, testing, and/or demonstration of Ōura Ring products.

121.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '475 Patent, including at least claims 1, 5, 8, and 11–13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

122.    Ōura's customers and other end-users directly infringe at least claims 1, 5, 8, and 11–13 at least by using infringing Ōura Ring products, which may be integrated with a smartphone or tablet running a health mobile app provided and/or supported by Ōura.  End-users have used and continue to use the subject matter of asserted system claims 1, 5, 8, and 11–13 by placing the Ōura Ring products into service and exercising control over them and obtaining beneficial use of each element of the claimed devices.  End-users initiate use of Ōura Ring products by placing an Ōura Ring on their finger, which may be wirelessly paired to a smartphone or tablet and synched to a health app on the smartphone or tablet with an associated cloud-based account.  The end user benefits from each component of the claimed device, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements.  Ōura's customers and other end-users also directly infringe at least claims 1, 5, 8, and 11–13 at least by using Ōura Ring wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

123.    Ōura has actual notice of the '475 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Ōura obtaining actual knowledge of the '475 Patent prior to commencement of this lawsuit will be confirmed during discovery.

124.    Ōura actively induces third parties, including customers and end-users, to use infringing Ōura Ring products operating in their normal and customary way and in accordance with their intended functionality and purpose.  Ōura induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ōura Ring products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Ōura Ring products in an

infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Ōura induces direct infringement by such third parties by (i) selling the Ōura Ring products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Ōura, when such products are designed for use as a measurement system that infringes the '475 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '475 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Ōura Ring products are operated such that each element of the patented devices are present in a manner dictated by Ōura; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Ōura Ring products in their customary way; (vi) advertising and promoting the Ōura Ring products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Ōura products including the physiological measurement features thereof.

125.    Upon gaining knowledge of the '475 Patent, it became apparent to Ōura that the manufacture, sale, importing, offer for sale, or use of the Ōura Ring products infringe the '475 Patent. Despite knowledge of the '475 Patent, Ōura continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner which infringes the '475 Patent. Ōura performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '475 Patent. Ōura directly benefits from and actively and knowingly encourages customers and end-users to use infringing Ōura Ring products. On information and belief, Ōura will continue to engage in activities constituting inducement of infringement, and with

the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '475 Patent.

126.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing Ōura Ring products pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Ōura Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 5, 8, and 11–13 of the '475 Patent, are especially made or especially adapted for use in infringing the patented devices and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

127.    Ōura's direct and indirect infringement of the '475 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.  Unless Ōura ceases its infringing activities, it will continue to injure Plaintiff.

128.    On information and belief, Ōura acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Ōura should have known about it.  Ōura continues to infringe the '475 Patent by making, using, selling, offering for sale and/or importing in the United States the Ōura Ring products and by inducing and contributing to the direct infringing use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Ōura continues its infringement notwithstanding actual knowledge of the '475 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid

claim of the '475 Patent.  Ōura's infringement of the '475 Patent, following its knowledge of the '475 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## JURY DEMANDED

129.    In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in its favor and against Defendants as follows:

i.      finding that Defendants have directly and/or indirectly infringed or are directly and/or indirectly infringing one or more claims of the Asserted Patent;

ii.     awarding Plaintiff damages in accordance with 35 U.S.C. § 284, or as otherwise permitted by law, including treble damages based on Defendants' willful infringement, and damages for any continued post-verdict infringement;

iii.    awarding Plaintiff pre-judgment and post-judgment interest on the damages award and costs;

iv.     declaring this case exceptional and awarding Plaintiff its reasonable attorney fees in accordance with 35 U.S.C. § 285, or as otherwise permitted by law;

v.      a permanent injunction enjoining each Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from infringing or inducing or contributing to the infringement of the Asserted Patent without additional compensation to Plaintiff in an amount to be determined by the Court; and

vi.       awarding all such other costs and further relief the Court determines to be just and

equitable.

Dated: May 5, 2025                              */s/ Daniel S. Stringfield*
                                                *w/ permission William E. Davis, III*
                                                William E. Davis, III
                                                Texas Bar No. 24047416
                                                bdavis@davisfirm.com
                                                **DAVIS FIRM, PC**
                                                213 N. Fredonia Street, Suite 230
                                                Longview, TX 75601
                                                Tel: (903) 230-9090
                                                Fax: (903) 230-9661

                                                Daniel S. Stringfield (Admitted E.D. Tex.)
                                                Illinois Bar No. 6293893
                                                dstringfield@nixonpeabody.com
                                                Timothy P. Maloney (Admitted E.D. Tex.)
                                                Illinois Bar No. 6216483
                                                tmaloney@nixonpeabody.com
                                                Dragan Gjorgiev (Admitted E.D. Tex.)
                                                Illinois Bar No. 6326950
                                                Texas Bar No. 24136166
                                                Peter Krusiewicz (Admitted E.D. Tex.)
                                                Illinois Bar No. 6342444
                                                **NIXON PEABODY LLP**
                                                70 West Madison
                                                Suite 5200
                                                Chicago, IL 60602
                                                Tel: (312) 977-4400
                                                Fax:  (312) 977-4405

                                                Corey T. Leggett (*pro hac vice* forthcoming)
                                                California Bar No. 342972
                                                cleggett@nixonpeabody.com
                                                **NIXON PEABODY LLP**
                                                1 Embarcadero Center
                                                32nd Floor
                                                San Francisco, CA 94111
                                                Tel: (415) 984-8200
                                                Fax:  (415) 984-8300

Elizabeth M. Chiaviello (Admitted E.D. Tex.)
Texas Bar No. 24088913
D.C. Bar No. 90033239
echiaviello@nixonpeabody.com
Benjamin R. Holt (Admitted E.D. Tex.)
D.C. Bar No. 1048285
bholt@nixonpeabody.com
**NIXON PEABODY LLP**
799 9th Street NW
Suite 500
Washington, D.C. 20001
Tel: (202) 585-8000
Fax:  (202) 585-8080

***Attorneys for Plaintiff Omni MedSci, Inc.***